Chelsea **LEYVA,** etc., et al.,
**Plaintiffs, Appellants,**

v.

**ON THE BEACH, INC.,** et al.,
**Defendants, Appellees.**

No. 98–1984.

United States Court of Appeals,
First Circuit.

Heard March 3, 1999.

Decided April 1, 1999.

Kevin G. Little, with whom Law Offices of David Efron was on brief, for appellants.

Edward J. Horowitz, with whom Gerardo A. Quirós López, John Q. Kelly, and Kelly & Campo LLP were on brief, for appellees.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and ACOSTA,* Senior District Judge.

SELYA, Circuit Judge.

On September 15, 1995, a tragedy occurred at a three-story beach house in Santurce, Puerto Rico, owned by Esther Feliciano Román (Feliciano). Because a hurricane had been forecasted, a gaggle of relatives, neighbors, friends, and acquaintances had been assisting in securing the beach house. The property itself comprised two stories operated by On The

* Of the District of Puerto Rico, sitting by designation.

Beach, Inc. (OTB) as the "Numero Uno Guest House," and a third floor that served as a private residence for Feliciano (who was OTB's president) and her husband, Chris Laube.

Jorge Alberto Leyva, variously described as a good friend of Laube and an employee or prospective employee of OTB, was one of those who participated in the pre-hurricane preparations. In the course of this activity, Leyva fell from a third-floor terrace. Five days later, he died from injuries sustained in the fall.

Invoking diversity jurisdiction, 28 U.S.C. § 1332(a), Leyva's family—all of whom were domiciled in Florida—brought a wrongful death action in the federal district court against OTB, Feliciano, and Laube.[1] The complaint attributed Leyva's demise to a dangerous condition on the third-floor terrace (principally, the absence of a railing at one spot) and asserted two main theories of liability against the several defendants. First, the plaintiffs alleged in substance that the decedent had been an employee of the defendants when injured, and that the defendants had breached a duty "to provide [him] a safe workplace." Alternatively, the plaintiffs alleged in substance that Feliciano and/or Laube were liable because they failed to maintain their premises in a reasonably safe condition and allowed (or, indeed, requested) the decedent to "perform an inherently dangerous task" thereon.

OTB and Feliciano (in her capacity as an officer, director, and shareholder of OTB) moved for partial summary judgment on the ground that, contrary to the plaintiffs' allegations, the decedent had not been employed by OTB on the date of the accident. Their motion addressed only the first of the plaintiffs' two theories. It in no way sought *brevis* disposition on the second theory, that is, on the claims asserted against Laube or against Feliciano in her individual capacity. In a preliminary margin order dated August 7, 1997, the district court acknowledged as much; the court wrote: "This motion only seeks to dismiss the cause of action against the corporation and the cause of action against E. Feliciano in her corporate capacity." The margin notation went on to pledge that "[t]he court will address the motion accordingly."

The plaintiffs opposed the defendants' motion for partial summary judgment, and the court eventually took it under advisement. On July 7, 1998, the court reneged on its earlier pledge; in a comprehensive opinion, it not only granted partial summary judgment as requested in the motion papers but also entered judgment against the plaintiffs on all remaining claims.[2] *See Leyva v. On The Beach, Inc.*, Civ. No. 96–2116(JAF), slip op. (July 7, 1998) (unpublished). The plaintiffs do not challenge the entry of summary judgment in favor of OTB and Feliciano in her corporate capacity, but, rather, restrict their appeal to the court's treatment of the individual liability claims.

■■ We need not linger long. To be sure, district courts possess the power to grant summary judgments on their own initiative. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir.1996). But unbesought summary judgments can prove problematic in the absence of proper procedural protections. To alleviate difficulties of this sort, we have counseled caution in the use of that technique. *See, e.g., Jardines Bacata, Ltd. v. Diaz–Marquez*,

---

1. The plaintiffs also sued two other defendants, Arecio Feliciano and Carmen Ana Román Rodriguez, but later voluntarily dismissed them from the action. Then, they added two insurance carriers in an amended complaint. Because the putative liability of the insurers is not in issue in this appeal, we omit any further reference to them.

2. According to the opinion, the court took this action notwithstanding its explicit acknowledgment that "the motion for summary judgment only relates to OTB and Esther Feliciano Román [in her corporate capacity]."

878 F.2d 1555, 1561 (1st Cir.1989) (warning, in regard to *sua sponte* summary judgments, that "unnecessary haste frequently results in more leisurely repentance"). Moreover, we have placed two constraints on a district court's authority to grant summary judgment *sua sponte:*

> First, a district court ordinarily may order summary judgment on its own initiative only when discovery is sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts. Second, the court may enter summary judgment sua sponte only if it first gives the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense.

*Berkovitz,* 89 F.3d at 29 (citations omitted); *accord Stella v. Town of Tewksbury,* 4 F.3d 53, 55 (1st Cir.1993).

In the instant case, the parties disagree about the status of pretrial discovery at the time the district court acted, and, thus, it is unclear whether the first condition precedent to a *sua sponte* summary judgment was met. We may skirt that imbroglio, however, for both of the *Berkovitz* conditions ordinarily must be fulfilled in order for a *sua sponte* summary judgment to withstand scrutiny—and in this case, the second condition was never satisfied.

■ In the context of a *sua sponte* summary judgment, "notice" means that the targeted party "had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward." *Jardines Bacata,* 878 F.2d at 1561. The court below gave no such notice. Prior to making the spontaneous ruling, it never informed the plaintiffs that it was considering a judgment that would extirpate their claims against Laube and/or Feliciano in her individual capacity. By the same token, it never invited the plaintiffs to assemble and proffer their best evidence in connection with those claims. To the contrary, the court's margin order, inscribed well before it ruled on the defendants' motion, stated in no uncertain terms that its decision would conform to the limited scope of the motion. When a court announces that it will follow a procedural course, the parties are entitled to rely on that announcement unless and until the court signals an impending change and affords a reasonable opportunity to regroup. *See Berkovitz,* 89 F.3d at 30; *Stella,* 4 F.3d at 55–56. The court's failure to adhere to these guidelines requires vacation of the challenged portion of the judgment below.

■■ The defendants' principal rejoinder is that notice would have been a futile exercise because the plaintiffs have no case: the accident was unforeseeable, and pretrial discovery has unearthed nothing that would show negligence on Feliciano's or Laube's part. That may well be true. From the pleadings and the briefs, the plaintiffs' case appears to be an uphill climb. But courts contemplating the entry of summary judgment cannot simply presume that plaintiffs will lose difficult cases and act accordingly. *Cf. Greenburg v. Puerto Rico Maritime Shipping Auth.,* 835 F.2d 932, 936 (1st Cir.1987) ("Fed. R.Civ.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger."). When, as now, the question comes down to one of fact, a plaintiff is entitled to advance warning that the *nisi prius* court is considering terminating his case by means of summary judgment, a fair opportunity to marshal whatever evidence he can muster, and a chance to put forward his assembled evidence, along with developed legal argumentation, in an effort to persuade the trier that a full-blown trial is warranted. When a trial court fails to furnish such notice and pretermits the plaintiff's presentation, it would be unseemly for an appellate court to require the plaintiff to go outside the record and make an affirmative showing that his claim is viable. In all but the most unusual cases, the record underlying that sort of fact-intensive analysis must first be constructed *in the district court.*

We need go no further. Because the lower court did not afford the plaintiffs adequate notice and a suitable opportunity to be heard before it exceeded the scope of the motion that was pending before it, we vacate so much of the court's order as purports to enter judgment in favor of Laube, Feliciano in her individual capacity, and their respective insurers, *see supra* note 1. We do not foreclose the possibility of summary judgment should the defendants so move, nor do we take any view as to the likely outcome of the case upon further proceedings below.

***Vacated in part and remanded. Costs to appellants.***