# United States Court of Appeals
## For the First Circuit

---

Nos. 04-1054; 04-1209

JOHN G. ALDEN, INC. OF MASSACHUSETTS;
JOHN G. ALDEN INSURANCE AGENCY, INC.,

Plaintiffs-Appellants\Cross-Appellees,

v.

JOHN G. ALDEN INSURANCE AGENCY OF FLORIDA, INC.;
JOHN G. ALDEN SPECIAL RISKS, INC.,

Defendants-Appellees\Cross-Appellants.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Lynch, Circuit Judge,
Campbell, Senior Circuit Judge,
and Stahl, Senior Circuit Judge.

---

Michael A. Albert, with whom John L. Strand, Lawrence M. Green, and Wolf, Greenfield & Sacks, P.C., were on brief, for appellants.
Kevin J. D'Espies, with whom Rutherford Mulhall, P.A., was on brief, for appellees.

---

November 10, 2004

---

**STAHL, <u>Senior Circuit Judge</u>**.  Plaintiffs-Appellants John G. Alden, Inc. of Massachusetts and John G. Alden Insurance Agency, Inc. (collectively "Alden Mass") brought this breach of contract and trademark infringement action under the Lanham Act, 15 U.S.C. § 1117(a), against Defendants-Appellees John G. Alden Insurance Agency of Florida, Inc. ("Alden Florida") and John G. Alden Special Risks, Inc. ("Special Risks") (collectively, "Appellees").  The district court granted summary judgment to Appellees, and Alden Mass now appeals.[1]  Because the district court failed to comply with Federal Rule of Civil Procedure 56(c), and failed to address at least one significant legal issue, we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Plaintiff-Appellant John G. Alden, Inc. of Massachusetts owns several federal registrations for trademarks related to the Alden name.[2]  On December 9, 1981, Alden Mass and Alden Florida entered into a license agreement (the "License Agreement") which granted Alden Florida, as licensee:

---

[1]Alden Florida and Special Risks filed a cross-appeal from the district court's denial of attorneys' fees under Federal Rule of Civil Procedure 68 and Section 35 of the Lanham Act, 15 U.S.C. § 1117.  We do not reach this issue in light of our disposition of the case.

[2]These marks include:  U.S. Service Mark Registration Nos. 2,308,835 and 2,307,288 for ALDEN®; No. 2,290,215 for JOHN G. ALDEN®; and Nos. 2,292,686, 2,291,150, 2,294,400, and 2,291,119 for variations of a rope logo.

The exclusive right and license in the State of Florida to operate an insuran[c]e, excluding life insurance, brokerage and agency business under the name "John G. Alden Insurance Agency of Florida, Inc." together with the right to use [Alden Mass'] commonly known logo on advertising matters and stationery.

In exchange, Alden Florida agreed "to pay [Alden Mass] three percent (3%) of gross commissions paid to [Alden Florida] and its salespersons for sale of insurance." The License Agreement also provided that Alden Florida could not assign or transfer the license without prior written approval of Alden Mass, and that Alden Mass could terminate the license if Alden Florida failed to make the payments required by the License Agreement.

Alden Florida made payments under the License Agreement from its execution in 1981 until approximately 1987, at which time Alden Florida stopped making payments. Although Alden Mass made an initial effort to collect from Alden Florida, it stopped all collection efforts no later than 1993.

On September 30, 2002, pursuant to the termination clause in the License Agreement, Alden Mass gave written notice to Alden Florida, purporting to terminate the License Agreement. Alden Florida did not respond, and continued to use Alden Mass' registered marks until 2003.

Frank Atlass, the founder, Chairman, and CEO of Alden Florida, incorporated Special Risks on November 18, 1999. There was never any license agreement between Alden Mass and Special

-3-

Risks.  Nonetheless, at all times from its incorporation until a few months after Alden Mass filed this suit, Special Risks used Alden Mass' registered marks to promote its business.

On November 1, 2002, Alden Mass filed suit against Alden Florida and Special Risks.  In a scheduling order, the district judge set a July 10, 2003 deadline for discovery, an August 10, 2003 deadline for the filing of summary judgment motions, and a September 10, 2003 deadline for the filing of oppositions to any summary judgment motions.  After Alden Florida and Special Risks filed their answer, Alden Mass filed a timely motion for summary judgment.  On August 7, 2003, the parties filed a joint motion for the entry of an injunction, which the court allowed.  Pursuant to that injunction, Appellees ceased using the Alden name, the Alden Mass registered marks, and the website domain name of www.aldeninsurance.com.  On August 11, 2003, Alden Florida and Special Risks filed an opposition to Alden Mass' motion for summary judgment and, for the first time, advanced the theory that Alden Florida had repudiated the License Agreement at least fifteen years earlier by "not making any payments."  On August 15, 2003, Alden Mass filed a reply, contending that as a matter of law, a contract cannot be repudiated by mere inaction.

Then, Alden Florida and Special Risks, with the permission of the court, took a late deposition of Nancy G. Ronan, a former employee of Plaintiff-Appellant John G. Alden Insurance

Agency, Inc. As a result of information learned during that deposition, on September 30, 2003, over a month-and-a-half after the deadline for filing summary judgment motions had passed, Appellees filed a motion for leave to file a late motion for summary judgment. For the first time, Appellees advanced the theory that they had repudiated the contract not only by non-payment, but also by affirmatively "informing [Alden Mass] that future payments would not be made." On October 3, 2003, the court denied Appellees' motion to file late.

On October 15, 2003, the district judge held a hearing on Alden Mass' motion for summary judgment ("Hearing"). That same day, Appellees filed a motion for reconsideration of the district court's order denying their motion for leave to file late ("Motion for Reconsideration").

During the Hearing, the district judge noted that Appellees' new affirmative repudiation theory was being presented to the court for the first time. In light of this new argument, and the fact that discovery was already closed, the district judge invited Alden Mass to submit a "letter" to the court, alerting the judge to anything "else in the [Ronan] deposition [she should] look at . . . . Or, [to point to any other] piece of evidence that makes [the statements in the Ronan deposition] a disputed issue of fact." The district judge was clear, however, that "discovery is

closed" and "there's no more briefing."  In response, Alden Mass submitted a letter to the court on October 23, 2003.

On November 26, 2003, the district judge granted Appellees' Motion for Reconsideration, and on the same day, entered an order denying Alden Mass' motion for summary judgment and granting summary judgment to Alden Florida and Special Risks.  The district judge determined that Alden Florida had repudiated the contract approximately fifteen years prior to suit, and therefore, Alden Mass' contract claims were barred by the statute of limitations, and its Lanham Act claims were barred by the equitable doctrine of laches.  The district judge's decision made no mention of Special Risks' use of Alden Mass' marks.

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that a summary judgment motion "shall be served at least 10 days before the time fixed for the hearing."  Fed. R. Civ. P. 56(c).  "We have interpreted Rule 56(c) to allow an adverse party at least ten days to respond to a motion for summary judgment."  Delgado-Biaggi v. Air Transp. Local 501, 112 F.3d 565, 567 (1st Cir. 1997); see Stella v. Town of Tewksbury, 4 F.3d 53, 55 (1st Cir. 1993) ("[S]ummary judgment targets should be secure in the knowledge that

they will have at least ten days in which to formulate and prepare their best opposition to an impending motion.").[3]

Here, it is unclear whether the district judge granted Appellees' motion for summary judgment or whether the judge raised the summary judgment motion sua sponte (and coincidentally granted Appellees' Motion for Reconsideration the same day as the judgment was entered).[4]  For purposes of Rule 56(c), however, this determination is irrelevant.  See Stella, 4 F.3d at 56 ("[I]t is well settled in this circuit that all summary judgment proceedings, including those initiated by the district judge, will be held to the standards enunciated in Rule 56 itself.").

Moreover, appellate review is "equally unaffected" by whether summary judgment was raised on motion of one of the parties or by the court sua sponte.  See Berkovitz v. Home Box Office, Inc., 89 F.3d 24, 30 (1st Cir. 1996).  We engage in plenary review of the district court's grant of summary judgment.  See id.

---

[3]We note that, "while Rule 56(c) refers to a 'hearing' in relation to the ten day proviso, the rule does not require oral argument in connection with the motion." Delgado-Biaggi, 112 F.3d at 567 n.4.

[4]Part of this ambiguity stems from the wording in the district court's order.  The order states:  "[Alden Mass'] motion is DENIED and the Court orders entry of judgment in favor of defendant [sic] pursuant to Fed. R. Civ. P. 56(b)," instead of, for example, "[Alden Mass'] motion is DENIED, [Alden Florida's and Special Risks'] motion is ALLOWED, and the Court orders entry of judgment in favor of defendants pursuant to Fed. R. Civ. P. 56(b)."

Here, Alden Mass learned for the first time that it was the target of a motion for summary judgment on November 26, 2003, when the district judge granted Appellees' Motion for Reconsideration. That very same day, the court entered summary judgment in favor of Appellees. Clearly, Alden Mass was not afforded the ten days to reply as required by Rule 56(c). See Fed. R. Civ. P. 56(c).

It could be argued that the district court's failure to comply with the strictures of Rule 56(c) was harmless. See, e.g., Am. Int'l Ins. Co. of P.R. v. Am. Nat'l Fire Ins. Co. (In re San Juan Dupont Plaza Hotel Fire Litig.), 45 F.3d 564, 568 (1st Cir. 1995) ("If we were completely certain that the merits of the summary judgment issue had been fully presented to the district court, it might be reasonable to conclude either that the essence of the [] notice requirement had been satisfied or that the failure to satisfy it was harmless.") (emphasis in original). We need not determine, however, whether our harmless error jurisprudence applies to the requirements of Rule 56, because the error here was not harmless.

First, we have held that "[w]hen a court announces that it will follow a procedural course, the parties are entitled to rely on that announcement unless and until the court signals an impending change and affords a reasonable opportunity to regroup." Leyva v. On The Beach, Inc., 171 F.3d 717, 720 (1st Cir. 1999); see

Berkovitz, 89 F.3d at 30 ("A court cannot alter its bearings mid-course without signalling the impending change to the parties."). Here, the district judge gave Alden Mass every indication that it would not grant Appellees' Motion for Reconsideration. At one point, when Alden Mass requested an opportunity to respond to Appellees' newly raised affirmative repudiation theory, the district judge stated: "[I]t's too late. I didn't let [Alden Florida and Special Risks] file a late motion. I'm not going to let you file a late motion." Furthermore, the district judge made clear at the Hearing that there would be "no more briefing." Moreover, the district judge informed the parties that after the Hearing, "we will set up the damages hearing. Because [Alden Mass] will be getting something." Plainly, Alden Mass had no notice that the district court was about to change its "procedural course" and not only accept Appellees' late motion, but also grant summary judgment in Appellees' favor. See Berkovitz, 89 F.3d at 31 (finding no notice where, inter alia, the court's pre-ruling statements pointed in the opposite direction).

Second, although it is true the district judge invited Alden Mass to submit a "letter" regarding the Ronan deposition, and to use that letter to point to any other piece of "evidence that makes [the statements in the Ronan deposition] a disputed issue of fact," Rule 56(c) requires more. At a minimum, the party preparing the response must have the motivation of knowing that it is the

target of a summary judgment motion. See In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d at 568 (finding no notice where the only issue pending was whether the court would grant permission to file a summary judgment motion). Here, Alden Mass did not know it had become the target of a summary judgment motion. Also, the district court had made it clear that it would not accept any further evidentiary submissions or further legal argument. Therefore, Alden Mass did not have a "meaningful opportunity to cull the best evidence supporting [its] position, and to present that evidence, together with developed legal argumentation, in opposition to the entry of summary judgment." Berkovitz, 89 F.3d at 31.

In addition to the district court's failure to follow the requirements of Rule 56(c), we also note that remand here is necessary because there is at least one "significant legal issue, not squarely addressed by the district court" that remains unresolved. See In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d at 568. The district court's decision is devoid of any reference to Special Risks' use of Alden Mass' registered marks. Special Risks is a separate legal entity from Alden Florida, formed merely three years prior to the filing of this suit. We are unsure how any alleged repudiation of the License Agreement between Alden Mass and Alden Florida in the late 1980s or early 1990s could justify Special Risks' use of Alden Mass' registered marks. That

-10-

said, "[g]iven the case's posture," we decline to "leapfrog[] to the merits." Stella, 4 F.3d at 55. This issue is more appropriately addressed on remand. Furthermore, the district judge did not squarely address Alden Mass' argument that laches does not apply to damages for Alden Florida's (and Special Risks') continued use of its registered marks after the date Alden Mass filed suit. See In re San Juan Dupont Plaza Hotel Fire Litig., 45 F.3d at 568. Again, this issue is more appropriately addressed on remand.

We recognize that in the end, Alden Mass may not be able to "muster enough evidence to ward off a properly advertised summary judgment." Berkovitz, 89 F.3d at 31. That possibility, however, does not affect our decision today: "The issue here is one of process and fundamental fairness, not one of substance." Rogan v. Menino, 175 F.3d 75, 80 n.4 (1st Cir. 1999).

### III. CONCLUSION

For the foregoing reasons, we **vacate** the judgment of the district court and **remand** the case for proceedings consistent with this opinion. **Costs to appellants.**